FERDINAND IP, LLC
Alexander R. Malbin, Esq. (AM 9385)
Edmund J. Ferdinand, III, Esq. (EF 9885)
450 Seventh Avenue, Suite 1300
New York, NY 10123
Phone: (212) 220-0523
Fax:    (212) 905-6747
amalbin@24iplg.com
jferdinand@24iplg.com

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAST-JAEGERMEISTER SE,<br><br>                                   Plaintiff,<br><br>             - against -<br><br>GEARLAUNCH, INC., THATCHER CLAFLIN SPRING,<br>DOE #1 (d/b/a piperexpress.com), DOE #2 (d/b/a<br>recallstore.com), DOE #3 (d/b/a customteesales.co), DOE<br>#4 (d/b/a wonderworldstore.com), and DOE #5 (d/b/a<br>hobby-boss.com)<br><br>                                   Defendants. | Index No.: 1:18-cv-06276<br><br><br>**COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff Mast-Jaegermeister SE ("Plaintiff"), by its attorneys, for its Complaint

against Defendants GearLaunch, Inc. ("GearLaunch"), Mr. Thatcher Claflin Spring

("Spring"), and Doe Defendants #1 through #5, alleges as follows:

#### NATURE OF THE ACTION AND RELIEF SOUGHT

1.   This action arises out of Defendants' blatant and willful violations of

Plaintiff's valuable trademark rights in and to the word mark JÄGERMEISTER, the

stylized word mark JÄGERMEISTER, and various design marks prominently featuring

the JÄGERMEISTER word or stylized word mark and/or stag deer head design elements

(collectively referred to hereinafter as the "JÄGERMEISTER Marks"), as used by

Plaintiff widely and continuously in the State of New York and in U.S. interstate commerce since 1968, in violation of the Lanham Act and the laws of the State of New York.

2.   As set forth below, Defendants have trampled on Plaintiff's trademark rights and continue to do so by manufacturing, marketing, advertising, promoting, offering for sale, distributing, and selling counterfeit clothing and apparel products prominently emblazoned with identical, indistinguishable, and confusingly similar imitations of Plaintiff's JÄGERMEISTER Marks.  As a result, Plaintiff is quickly losing the value of its trademarks, its brand identity, and control over its goodwill and reputation, and the marketplace is being inundated with counterfeit products which consumers are being confused into falsely believing are authorized, associated with, sponsored by, affiliated with, or otherwise connected to Plaintiff.  Accordingly, the harm suffered by Plaintiff and the public as a result of Defendants' ongoing acts of infringements and unfair competition is irreparable, and Defendants wrongful activities will continue unless enjoined by the Court.

## THE PARTIES

3.   Plaintiff, Mast-Jaegermeister SE, is a European company duly organized and existing under the laws of Germany, with its principal place of business located at Jaegermeisterstrasse 7-15, 38296 Wolfenbuettel, Germany.

4.   Upon information and belief, Defendant GearLaunch is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 234 Front Street, 3rd Floor, San Francisco, California, 94111.

5.   Upon information and belief, Defendant Spring is an individual residing in

San Francisco, California.  Upon information and belief, Spring is the founder and chief

executive officer of GearLaunch, exercises control over GearLaunch's policies,

standards, and compliance with intellectual property laws, and knowingly authorized,

directed, and/or substantially participated in the infringing activities described in this

Complaint in his personal capacity and for the benefit of himself personally.

6.   Upon information and belief, Defendant Does #1 through #5 are persons

and/or entities with unknown addresses who have engaged in illicit activities described in

this Complaint by their record registration, ownership, and/or operation of the web sites

located at the domain names www.piperexpress.com, www.recallstore.com,

www.customteesales.co, www.wonderworldstore.com, and www.hobby-boss.com,

respectively.

<u>**JURISDICTION AND VENUE**</u>

7.   This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331, 1332 and 1338 and 15 U.S.C. § 1121 because Plaintiff's claims arise

under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq*.  The Court has

supplemental jurisdiction over the state law and common law claims under 28 U.S.C. §

1338(b) and 28 U.S.C. § 1367(a).

8.   This Court may exercise personal jurisdiction over Defendants because, upon

information and belief, Defendants engage in continuous and systematic business

activities in this Judicial District, and/or regularly solicit business in New York and this

Judicial District and derive substantial revenue from interstate commerce, and/or have

purposely directed substantial activities at the residents of New York and this Judicial

District by means of the web sites described herein and derive substantial revenue from

interstate commerce; and/or have committed tortious acts (namely, the acts of trademark infringement and unfair competition described herein) directed at persons located in this State and this Judicial District.

9.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO THE COUNTS

### A.  PLAINTIFF'S VALUABLE JAEGERMEISTER MARKS

10. Plaintiff is a manufacturer, distributor, and seller of Jägermeister, an herbalic liqueur.  The Jägermeister name, as well as the JÄGERMEISTER Marks used in connection with the marketing and sale of Jägermeister liqueur, are famous throughout the United States and worldwide as identifying Plaintiff's herbalic liqueur.

11. Since 1972, Plaintiff has made continuous and widespread use in interstate commerce of the JÄGERMEISTER Marks in connection with its signature herbalic liqueur.

12. Plaintiff also offers many other goods and services under the JÄGERMEISTER Marks, including, without limitation, a line of clothing products.

13. Additionally, Plaintiff licenses rights to use of the JÄGERMEISTER Marks to third parties for use in connection with a full merchandising program featuring a wide variety of goods and services, including, without limitation, clothing and accessory products.  Plaintiff's licensing agreements with third parties are subject to rigorous quality control and supervision to ensure that officially licensed products bearing the JÄGERMEISTER Marks are of the highest quality and thereby consistent with Plaintiff's own goods or services offered under the JÄGERMEISTER Marks.

14. Plaintiff and its authorized licensees have made exclusive use of the

JÄGERMEISTER Marks for many years on clothing as well as other products, which have been sold nationwide and worldwide (including, but not limited to, on the Internet), and which has resulted in substantial sales.

15. Plaintiff owns many U.S. federal trademark registrations covering the JÄGERMEISTER Marks – including the following registrations for marks used in connection with clothing products in Int'l Class 25 (collectively, the "Class 25 Registrations"):

[a]    Incontestable U.S. Registration No. 3,076,932, duly and legally issued on April 4, 2006 on the Principal Register of the U.S. Patent and Trademark Office ("PTO") for the stylized word mark JÄGERMEISTER:



as applied to various goods and services in Int'l Classes 18 and 25 – including, with respect to Class 25, "Clothing, namely, shirts, shorts, jackets, sweatshirts, headwear, namely, hats and caps, footwear".

[b]    Incontestable U.S. Registration No. 3,183,955, duly and legally issued on December 12, 2006 on the Principal Register of the PTO for the mark STAG HEAD Design:



as applied to various goods and services in Int'l Classes 9, 11, 14, 15, 18, 21, 22, 24, 25, 26, 27, 28, 33, 34, 35, 41, and 43 – including, with respect to Class 25, "Clothing, namely, shirts, shorts, pants, jackets, underwear, lingerie, sweat shirts, and head gear, namely, hats and caps; footwear".

   [c]  U.S. Registration No. 5,121,995, duly and legally issued on January 17, 2017 on the Principal Register of the PTO for the mark JÄGERMEISTER & Design:



as applied to various goods in Int'l Classes 25 and 33 – including, with respect to Class 25, "Headwear; Clothing, namely, shirts, shorts, pants, jackets, suits, underwear, socks, pajamas, lingerie, sweatshirts, sweatpants, aprons, bathrobes, swimwear, skirts, blouses, tank tops, vests, hoodies, dresses, jerseys, scarves, head scarves, bandanas, hats, caps,

belts, gloves, mittens, earmuffs; Footwear; flip flops".

[d]     U.S. Registration No. 5,129,219, duly and legally issued on January 24, 2017 on the Principal Register of the PTO for the mark STAG HEAD Design:



as applied to various goods in Int'l Classes 25 and 33 – including, with respect to Class 25, "Headwear; Clothing, namely, shirts, shorts, pants, jackets, suits, underwear, socks, pajamas, lingerie, sweatshirts, sweatpants, aprons, bathrobes, swimwear, skirts, blouses, tank tops, vests, hoodies, dresses, jerseys, scarves, head scarves, bandanas, hats, caps, belts, gloves, mittens, earmuffs; Footwear; flip flops".

[e]     U.S. Registration No. 5,135,539, duly and legally issued on February 7, 2017 on the Principal Register of the PTO for the mark STAG HEAD Design:



as applied to various goods in Int'l Classes 9, 11, 14, 15, 16, 18, 20, 21, 24, 25, 28, 33, 34, 35, 41, and 43 – including, with respect to Class 25, "Headwear; Clothing, namely,

shirts, shorts, pants, jackets, suits, underwear, socks, pajamas, lingerie, sweatshirts,

sweatpants, aprons, bathrobes, swimwear, skirts, blouses, tank tops, vests, hoodies,

dresses, jerseys, scarves, head scarves, bandanas, hats, caps, belts, gloves, mittens,

earmuffs; Footwear; flip flops".

    [f]    U.S. Registration No. 5,135,541, duly and legally issued on

February 7, 2017 on the Principal Register of the PTO for the mark STAG HEAD

Design:



as applied to various goods in Int'l Classes 25 and 33 – including, with respect to Class

25, "Headwear; Clothing, namely, shirts, shorts, pants, jackets, suits, underwear, socks,

pajamas, lingerie, sweatshirts, sweatpants, aprons, bathrobes, swimwear, skirts, blouses,

tank tops, vests, hoodies, dresses, jerseys, scarves, head scarves, bandanas, hats, caps,

belts, gloves, mittens, earmuffs; Footwear; flip flops".

    16. Plaintiff's Class 25 Registrations are in all respects valid, subsisting and in

full force and effect.

    17. Plaintiff also owns many additional U.S. federal trademark registrations

covering its JÄGERMEISTER Marks for use in connection with goods and services other

than Class 25 goods, including the following (collectively, the "Non-Class 25

Registrations"):

[a]     Incontestable U.S. Registration No. 0,857,604, duly and legally issued on September 24, 1968 on the Principal Register of the PTO for the stylized word mark JÄGERMEISTER:



as applied to goods in Int'l Class 33.

[b]     Incontestable U.S. Registration No. 0,861,094, duly and legally issued on November 26, 1968 on the Principal Register of the PTO for the mark JÄGERMEISTER & Design:

as applied to goods in Int'l Class 33.

[c]     Incontestable U.S. Registration No. 1,952,558, duly and legally issued on January 30, 1996 on the Principal Register of the PTO for the mark JÄGERMEISTER AUSZUG etc. & Design:



as applied to goods in Int'l Class 33.

[d]     Incontestable U.S. Registration No. 2,165,258, duly and legally issued on June 16, 1998 on the Principal Register of the PTO for the mark JÄGERMEISTER KRAUTER-LIQUEUR etc. & Design:



as applied to goods in Int'l Class 33.

[e]     Incontestable U.S. Registration No. 2,303,099, duly and legally issued on December 29, 1999 on the Principal Register of the PTO for the mark STAG HEAD Design:



as applied to goods in Int'l Class 33.

        [f]      Incontestable U.S. Registration No. 2,970,791, duly and legally

issued on July 19, 2005 on the Principal Register of the PTO for the mark

JÄGERMEISTER & Design:



as applied to goods in Int'l Class 33.

        [g]      Incontestable U.S. Registration No. 3,051,959, duly and legally

issued on January 31, 2006 on the Principal Register of the PTO for the mark

JÄGERMEISTER AUSZAG etc. & Design:



as applied to goods in Int'l Class 33.

[h]     U.S. Registration No. 4,507,949, duly and legally issued on April 1, 2014 on the Principal Register of the PTO for the mark JÄGERMEISTER SPICE as applied to goods in Int'l Class 33.

[i]     U.S. Registration No. 4,694,048, duly and legally issued on March 3, 2015 on the Principal Register of the PTO for the mark JÄGERMEISTER PRODUCED AND BOTTLED etc. & Design:



as applied to goods in Int'l Class 33.

[j]     U.S. Registration No. 4,702,125, duly and legally issued on March

17, 2015 on the Principal Register of the PTO for the mark JÄGERMEISTER SPICE etc. & Design:



as applied to goods in Int'l Class 33.

[k]     U.S. Registration No. 5,121,995, duly and legally issued on January 17, 2017 on the Principal Register of the PTO for the mark JÄGERMEISTER & Design:



as applied to goods in Int'l Class 33.

[l]     U.S. Registration No. 5,266,890, duly and legally issued on August 15, 2017 on the Principal Register of the PTO for the mark JÄGERMEISTER

SELECTED etc. & Design:



as applied to goods in Int'l Class 33.

18. Plaintiff's Non-Class 25 Registrations are in all respects valid, subsisting and in full force and effect.

19. Plaintiff's JÄGERMEISTER Marks are inherently distinctive to the public and the trade with respect to its wide array of goods and services, and they serve primarily as designators of origin of products emanating from, or sponsored or licensed by, or affiliated with, Plaintiff.

20. Plaintiff has promoted, marketed, advertised, and used its JÄGERMEISTER Marks extensively, and has made substantial sales of products and services offered under and/or bearing the JÄGERMEISTER Mark.

21. As a result of the promotion, marketing, advertising and use of the JÄGERMEISTER Marks during the past 45+ years, (a) the public and the trade have come to recognize the JÄGERMEISTER Marks as exclusively identifying high quality products and services emanating from a single source of origin, (b) the JÄGERMEISTER Marks have gained secondary meaning and extensive marketplace goodwill, and (c) the

JÄGERMEISTER Marks are famous and became famous prior to Defendants' illicit use

of the JÄGERMEISTER Marks alleged in this Complaint.

**B.  THE DEFENDANTS, THEIR BUSINESS OPERATIONS, & THEIR DOCUMENTED HISTORY OF TRADEMARK INFRINGING ACTIVITY**

22. Upon information and belief, Defendants GearLaunch and Spring provide

full-service production, marketing, and sales services for the production, marketing and

sale of unauthorized, counterfeit clothing and apparel products under the pretext of

"licensing" services.  Upon information and belief, Defendants GearLaunch and Spring

create and manage online storefronts for their clients and also act as the manufacturer,

distributor, and fulfillment handler for orders taken through such storefronts – including,

without limitation, by securing URLs for the hosting of such online storefronts, providing

logistical and marketing support, providing technological means for the uploading of

unauthorized design images to be printed upon clothing and apparel products,

commissioning the production of counterfeit products (bearing such unauthorized design

images) to be sold through such storefronts, processing retail orders from customers,

processing returns, and shipping products to customers, and process retail transactions on

their clients' behalf.  In short, Defendants GearLaunch and Spring knowingly provide

their clients with a ready-made platform for widespread trademark infringement and

counterfeiting, and their infringing and counterfeit products have been offered or are

offered for sale on dozens of websites owned or controlled by, or affiliated with,

Defendants GearLaunch and Spring.

23. Upon information and belief, clients of Defendants GearLaunch and Spring

include Does #1, #2, #3, #4, and #5, which, upon information and belief, are the

registered owners of the web sites located at the domain names www.piperexpress.com,

www.recallstore.com, www.customteesales.co, www.wonderworldstore.com, and hobby-boss.com.

24. As a result of their illicit business activities, Defendants GearLaunch and/or Spring have faced multiple trademark infringement and counterfeiting lawsuits over the last two years, including:

- *Indian Motorcycle Int'l LLC v. GearLaunch Inc., et al.,* Civil Action No. 0:16-cv-02095-WMW-SER (D. Minn. 2016), alleging, *inter alia*, infringement, counterfeiting, and dilution of INDIAN word and design marks;

- *H-D USA LLC v. GearLaunch Inc., et al.*, Civil Action No. 2:2016-cv-01167 (E.D. Wis. 2016), alleging, *inter alia*, infringement, counterfeiting, and dilution of HARLEY-DAVIDSON marks;

- *Hamilton Uptown LLC v. Sunfrog, LLC, GearLaunch Inc., et al.*, Civil Action No. 1:16-cv-07834 (S.D.N.Y. 2016) alleging, *inter alia*, infringement and dilution of HAMILTON marks;

- *Bravado Int'l Group Merchandising Svcs. Inc., et al., v. GearLaunch Inc., et al.*, Civil Action No. 2:2016-cv-08657 (C.D. Cal. 2016), alleging, *inter alia*, infringement and dilution of marks of twenty-six musicians and entertainers (incl. the Rolling Stones, Bob Marley, Justin Bieber, and Lady Gaga); and,

- *The Regents of the Univ. of Cal., et. al., v. GearLaunch Inc. and Thatcher Claflin Spring*, Civil Action No. 4:17-cv-02280-DMR (N.D. Cal. 2017), alleging, *inter alia*, infringement, counterfeiting, and dilution of marks of twenty-nine colleges and universities.

- *Hold This, Inc. v. Gearlaunch, Inc., et al.*, Civil Action No. 1:18-cv-01386-

SCJ (N.D. Ga. 2018), alleging, *inter alia*, trademark and copyright

infringement of certain federally-registered trademarks and copyright-

registered artwork.

25. As shown by the numerous trademark counterfeiting and infringement

lawsuits brought against Defendants and Defendants' continued counterfeiting and

infringing activities described in this Complaint, Defendants GearLaunch and Spring are

brazen, remorseless counterfeiters whose entire business is built on infringing the

intellectual property rights and free-riding on the marketplace goodwill and reputations of

established brands – including, as alleged in this Complaint, Plaintiff.

### C. DEFENDANTS' ACTS OF TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION

26. Upon information and belief, without license, authorization or permission

from Plaintiff, and in blatant and brazen disregard for Plaintiff's rights in the

JÄGERMEISTER Marks, Defendants GearLaunch and Spring have manufactured,

promoted, distributed, offered for sale, and/or sold counterfeit apparel products bearing

one or more identical, substantially indistinguishable, and/or confusingly similar

imitations of the JÄGERMEISTER Marks (including those covered by the Class 25

Registrations) (the "Infringing Products"), and further, have knowingly facilitated use by

third parties (including, but not limited to, Does #1 through #5) of identical, substantially

indistinguishable, and/or confusingly similar imitations of the JÄGERMEISTER Marks

(including those covered by the Class 25 Registrations) in the distribution and sale of the

Infringing Products.  (Representative examples of the Infringing Products are attached at

Exhibit A.)

27. Upon information and belief, Defendant GearLaunch is manufacturing,

advertising, marketing, distributing, offering for sale, and/or selling Infringing Products, and, upon information and belief, Defendant Spring has knowingly authorized, directed, and/or substantially participated in GearLaunch's manufacture, distribution, offering for sale, and/or sale of Infringing Products personally and for his personal benefit.

28. The Infringing Products manufactured, advertised, marketed, distributed, offered for sale, and sold by and/or at the direction of Defendants GearLaunch and Spring have not been licensed, authorized, sponsored, endorsed, or approved by Plaintiff. Defendants GearLaunch and Spring are neither associated, affiliated, or connected with Plaintiff, nor licensed, authorized, sponsored, endorsed, or approved by Plaintiff.

29. Upon information and belief, the Infringing Products have been marketed, offered for sale, and sold by Defendants GearLaunch and Spring through the web sites located at the domain names www.piperexpress.com, www.recallstore.com, www.customteesales.co, www.wonderworldstore.com, and www.hobby-boss.com, among other channels of trade.

30. The Infringing Products are similar to and compete with authorized apparel products bearing the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) sold by Plaintiff and its official licensees.

31. The Infringing Products and authorized goods bearing the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) sold by Plaintiff and its official licensees are sold through identical and overlapping channels of trade.

32. The Infringing Products bear designs and symbols that are substantially and confusingly similar to one of more of Plaintiff's JÄGERMEISTER Marks.

33. The Infringing Products bear spurious designations that are identical to and/or

indistinguishable from those of Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations, and are, therefore, counterfeit.

34. Some or all of the Infringing Products are of poor quality, inferior to the quality of authorized goods bearing the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) sold by Plaintiff and its official licensees.

35. Upon information and belief, the Infringing Goods have been and/or presently are offered for sale and sold on numerous e-commerce websites that are owned, operated, controlled, registered by, and/or otherwise affiliated with, Defendants GearLaunch and Spring.

36. Upon information and belief, the Infringing Goods have been and/or presently are marketed, promoted, and advertised on social media platforms including Facebook via distribution of sponsored advertisements directing users to the e-commerce websites where the Infringing Goods are offered for sale.  Upon information and belief, Defendants GearLaunch and Spring are responsible for the public distribution of such sponsored advertisements for the Infringing Products.

37. Upon information and belief, Defendants' aforementioned use of the JÄGERMEISTER Marks in connection with marketing, promotion, advertising, offering for sale, distributing, and selling the Infringing Products has been directed at consumers located in the State of New York, this Judicial District, and nationwide.

38. The manufacturing, advertising, marketing, promoting, distribution, offering for sale, and sale of the Infringing Products, and use of identical, substantially indistinguishable, and/or confusingly similar imitations of the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) in connection therewith, engaged

in and/or knowingly facilitated by Defendants GearLaunch and Spring is likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into falsely believing that the Infringing Products are manufactured by, licensed by, authorized by, or otherwise approved by Plaintiff.

39. Upon information and belief, Defendants GearLaunch and Spring had actual knowledge of the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) and Plaintiff's rights with respect thereto when they began manufacturing, advertising, marketing, promoting, distributing, offering for sale, and/or selling the Infringing Products, and/or facilitating such activities by third parties (including Does #1 through #5).

40. Upon information and belief, Defendants GearLaunch and Spring were aware or should have been aware – particularly in light of their trademark infringement litigation history described *supra* at Paragraph 23 – that the marketing, distribution and sale of the Infringing Products would likely cause confusion among consumers and would dilute Plaintiff's rights in the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations).

41. Upon information and belief, Defendants GearLaunch and Spring knowingly, willfully, intentionally, and maliciously adopted and used substantially indistinguishable and confusingly similar imitations of the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) on the Infringing Products to mislead and deceive consumers into believe that the Infringing Products are licensed or authorized by, or emanate from, Plaintiff, and to free-ride and otherwise trade on the substantial marketplace goodwill and reputation of Plaintiff embodied in the JÄGERMEISTER

Marks (including those covered by the Class 25 Registrations).

42.  Defendants GearLaunch and Spring have acted in bad faith, with malicious intent, and in knowing disregard of Plaintiff's rights in and to the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations), with the intent of free-riding on the substantial marketplace reputation and goodwill associated with the JÄGERMEISTER Marks.

43. The likelihood of confusion, mistake, and deception caused by the above-described misconduct of Defendants GearLaunch and Spring is causing irreparable harm to the goodwill symbolized by the JÄGERMEISTER Marks (including those covered by the Class 25 Registrations) and the reputation for quality that they embody.

44. The likelihood of confusion, mistake, and deception caused by the above-described misconduct of Defendants GearLaunch and Spring is particularly damaging with respect to those persons who perceive a defect or lack of quality in the Infringing Products.

45. Upon information and belief, by virtue of their above-described misconduct, Defendants GearLaunch and Spring have made substantial profits and gains to which they are not entitled in law or equity.

**E.  PLAINTIFF'S DISCOVERY OF DEFENDANTS' ILLICIT ACTIVITIES, & DEFENDANTS CONTINUED WILLFUL INFRINGEMENT**

46. On or about December 11, 2017, Plaintiff first discovered the Infringing Products offered for sale on the web site www.piperexpress.com, as well as marketed, advertised, and promoted via sponsored advertisements distributed to the public on the social media platform Facebook which direct users to the web pages on the web site www.piperexpress.com where the Infringing Products are offered for sale.

47. Upon information and belief, Defendants GearLaunch and Spring are responsible for the marketing and offering for sale of the Infringing Products on the web site www.piperexpress.com.

48. Upon information and belief, Defendants GearLaunch and Spring are responsible for the public distribution of sponsored advertisements on Facebook marketing, advertising, and promoting the Infringing Products and directing users to the web pages on the web site www.piperexpress.com where the Infringing Products are offered for sale.

49. Following such discovery, on or about December 11, 2017, Plaintiff contacted the "support" email address for the web site www.piperexpress.com to notify of Plaintiff's rights in the JÄGERMEISTER Marks and the infringing nature of the Infringing Products displayed and offered for sale on the web site www.piperexpress.com, and to demand that all use of the JÄGERMEISTER Marks be immediately ceased and desisted.

50. Thereafter, on or about December 13, 2017, again on or about December 15, 2017, and yet again on or about December 20, 2017, Plaintiff contacted the "support" email address for the web site www.piperexpress.com to notify that the Infringing Products were still displayed and offered for sale on the web site www.piperexpress.com as of those dates, and to reiterate its prior demand that all use of the JÄGERMEISTER Marks be immediately ceased and desisted.

51. Despite Plaintiff's numerous cease-and-desist demands, upon information and belief, Defendants GearLaunch and Spring have continued to market, advertise, promote, offer for sale, distribute, and sell the Infringing Products.

52. Subsequent to Plaintiff's December 2017 cease-and-desist demands, in January 2018, Plaintiff discovered the Infringing Products marketed and offered for sale on the web sites www.recallstore.com, www.customteesales.co, and www.wonderworldstore.com.

53. Upon information and belief, Defendants GearLaunch and Spring are responsible for the marketing and offering for sale of the Infringing Products on the web site www.recallstore.com, www.customteesales.co, and www.wonderworldstore.com.

54. Additionally, subsequent to Plaintiff's December 2017 cease-and-desist demands, Plaintiff discovered the Infringing Products marketed and offered for sale on Facebook sponsored advertisements which directed users to web pages on the web site www.wonderworldstore.com where the Infringing Products are offered for sale.

55. Upon information and belief, Defendants GearLaunch and Spring are responsible for the public distribution of sponsored advertisements on Facebook marketing, advertising, and promoting the Infringing Products and directing users to the web pages on the web site www.wonderworldstore.com where the Infringing Products are offered for sale.

56. Furthermore, on or about January 16, 2018, Plaintiff received notice from German Customs that it had seized a shipment of counterfeit products emblazoned with the JÄGERMEISTER Marks.

57. German Customs' January 16, 2018 seizure notice to Plaintiff identified Defendant GearLaunch as the source of the counterfeit product shipment.

58. Thereafter, on or about January 16, 2018, Plaintiff's legal counsel wrote to Defendant GearLaunch, notifying it of Plaintiff's knowledge of the offering for sale of

the Infringing Products on the web sites www.piperexpress.com and

www.customteesales.co as well as German Customs' seizure of its shipment of Infringing

Products, and demanding withdrawal of all advertisements referring to Plaintiff or the

JÄGERMEISTER Marks and identification of its sales of Infringing Products and all web

sites through which such sales were made.

59. On or about January 17, 2018, Defendant GearLaunch responded to Plaintiff's

counsel that "[t]he piperexpress website has been permanently removed from our

platform" – thereby acknowledging that the web site www.piperexpress.com was in fact

hosted by Defendant GearLaunch on its online platform.  Defendant GearLaunch failed

to disclose the other web sites through which it has marketed or offered for sale the

Infringing Products, failed to provide assurances that it would cease further use of the

JÄGERMEISTER Marks, and failed to provide their total sales of the Infringing

Products.

60. Thereafter, on or about January 24, 2018, Plaintiff received notification from

German Customs that it had seized another shipment of Infringing Products.

61. Thereafter, on or about February 14, 2018, Plaintiff placed an order through

the web site www.recallstore.com for the purchase of one of the Infringing Products

offered on that web site.

62. On or about March 7, 2018, Plaintiff received the shipment of its February 14,

2018 order placed through the web site www.recallstore.com.  The Infringing Product

received in that shipment, specifically the printing on that product, was of very poor

quality.  (Images of this Infringing Product received by Plaintiff on March 7, 2018 are

attached at Exhibit B.)

63. On or about March 7, 2018, Plaintiff contacted the "support" email address for the web site www.recallstore.com to notify of the poor quality of the product purchased by Plaintiff through that web site.

64. On or about March 19, 2018, Plaintiff received a response to its March 7, 2018 message from an individual identified as "Angel (Custom Tee Sales)", emanating from the email address support@recallstore.com, acknowledging and apologizing for "our mistake" as to the product's quality, informing Plaintiff that a refund would be issued for its order, and closing the message with: "Regards, Custom Tee Sales".

65. Thereafter, on or about March 19, 2018, Plaintiff responded to the March 19, 2018 received from "Angel (Custom Tee Sales)" to notify of Plaintiff's rights in the JÄGERMEISTER Marks and the infringing nature of the Infringing Products displayed and offered for sale on the web site www.recallstore.com and to demand that all use of the JÄGERMEISTER Marks be immediately ceased and desisted.

66. On or about March 20, 2018, Plaintiff received a response to its March 19, 2018 message from an individual identified as "Sarah (Custom Tee Sales)", emanating from the email address support@recallstore.com, stating only: "This has been removed."

67. The fact that individuals self-identified as associated with "Custom Tee Sales" responded to Plaintiff's message to the "support" email address for the web site www.recallstore.com, using an email address ending in "recallstore.com", indicates that the same persons handle receiving and responding to inquiries directed to the "support" email addresses for both the web sites www.customteesales.co and www.recallstore.com.

68. Upon information and belief, Gearlaunch handles receiving and responding to inquiries directed to the "support" email addresses for both www.customteesales.co and

www.recallstore.com as a service to its clients.

69. Thereafter, on or about April 3, 2018, Plaintiff discovered Infringing Products marketed and offered for sale on the web site www.hobby-boss.com.

70. Upon information and belief, Defendants GearLaunch and Spring are responsible for the marketing and offering for sale of the Infringing Products on the web site www.hobby-boss.com.

71. On or about April 3, 2018, Plaintiff placed an order through the web site www.hobby-boss.com for the purchase of one of the Infringing Products offered on that web site.

72. On or about April 20, 2018, Plaintiff received the shipment of its April 3, 2018 order placed through the web site www.hobby-boss.com.  The Infringing Product received in that shipment was of very poor quality, bearing numerous scratches.  (Images of this Infringing Product received by Plaintiff on or about April 20, 2018 are attached at Exhibit C.)

73. On or about April 29, 2018, Plaintiff contacted the "support" email address for the web site www.hobby-boss.com to notify of the poor quality of the product purchased by Plaintiff through that web site.

74. On or about April 30, 2018, Plaintiff received a response to its April 29, 2018 message from an individual identified as "Maria (Custom Tee Sales)", emanating from the email address support@customteesales.zendesk.com, acknowledging and apologizing for the problem with the order, informing Plaintiff that a replacement would be shipped, and closing the message with: "Best regards, Custom tea [sic] sales".

75. The fact that an individual self-identified as associated with "Custom Tee

Sales" responded to Plaintiff's message to the "support" email address for the web site www.hobby-boss.com, from an email address including "customteesales", indicates that the same persons handle receiving and responding to inquiries directed to the "support" email address of both the web sites www.customteesales.co and www.hobby-boss.com.

76. Upon information and belief, Gearlaunch handles receiving and responding to inquiries directed to the "support" email addresses for both www.customteesales.co and www.hobby-boss.com as a service to its clients.

77. Thereafter, on or about May 25, 2018, Plaintiff received the replacement unit of the Infringing Product – which also was of very poor quality, bearing numerous scratches.  (Images of this replacement Infringing Product received by Plaintiff on or about May 25, 2018 are attached at Exhibit D.)  Plaintiff emailed the "customteesales" support email address with which it had previously corresponded on that same day to inform of the poor quality of this replacement unit of the Infringing Product.

78. On or about May 27, 2018, Plaintiff received a response to its May 25, 2018 message from an individual identified as "Jimmy (Custom Tee Sales)", emanating from the email address support@customteesales.zendesk.com, offering to either create another replacement unit of the Infringing Product received by Plaintiff on or about May 25, 2018, or to reimburse Plaintiff for the purchase price.

79. On or about May 28, 2018, Plaintiff responded to the message received from the email address support@customteesales.zendesk.com on or about May 25, 2018, requesting reimbursement of the purchase price of the defective Infringing Product.  On or about that same day, Plaintiff received a response that reimbursement would be issued.

80. Upon information and belief, Defendants GearLaunch and Spring have

knowingly and intentionally continued to engage in marketing, promotion, advertisement, offering for sale, distribution, and/or sale of the Infringing Products though the web sites www.piperexpress.com, www.recallstore.com, www.customteesales.co, www.wonderworldstore.com, and/or www.hobby-boss.com, and/or have knowingly and intentionally continued to supply services to their clients (including, but not limited to, Does #1 through #5) for such web sites knowing, or with reason to know, that such clients utilize such services for purposes of marketing, advertising, offering for sale, distributing, and selling Infringing Products on such web sites, subsequent to and despite Plaintiff's repeated notifications of its rights in and to the JÄGERMEISTER Marks and demands to cease and desist such infringing activities.

81. In light of the foregoing, it is clear that, despite Plaintiff's numerous notifications of its rights in and to the JÄGERMEISTER Marks and demands to cease and desist their infringing activities, Defendants have continued and will continue to market, promote, advertise, offer for sale, distribute, and sell Infringing Products. Accordingly, intervention of this Court is required to put a stop to Defendants' brazen infringing activities, protect Plaintiff's reputation and marketplace goodwill from further harm, and prevent further consumer confusion by enjoining Defendants from further inundating the marketplace with Infringing Products confusingly similar to, and of poor quality inferior to the quality of, Plaintiff's officially licensed apparel products.

## FIRST CAUSE OF ACTION
### Federal Counterfeiting
### (as to all Defendants)

82. Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

83. Defendants have used in commerce spurious marks that are counterfeits of, identical to, or substantially indistinguishable from, Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations, in connection with goods identical to goods identified in Plaintiff's Class 25 Registrations.

84. Defendants have used such marks knowing that they are counterfeit in connection with the promotion and/or sale of goods identical to the goods of Plaintiff without the consent or authorization of Plaintiff, in a manner likely to cause confusion, to cause mistake, or to deceive as to source or origin among consumers.

85. Defendants' unauthorized use of Plaintiff's JÄGERMEISTER Marks is likely to mislead and cause consumers and/or the general public to falsely believe that Defendants' Infringing Products are manufactured or distributed by Plaintiff, or are associated or connected with Plaintiff, or have the authorization, sponsorship, endorsement, or approval of Plaintiff.

86. Defendants' actions demonstrate an intentional, willful, and malicious intent to counterfeit Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations.

87. Defendants' actions constitute counterfeiting under 15 U.S.C. § 1114.

88. Plaintiff's goodwill in its name and its JÄGERMEISTER Marks will be irreparably harmed if Defendants' illicit use thereof is not enjoined.

89. Upon information and belief, Defendants have intentionally used and continue to intentionally use spurious marks that are counterfeits of, identical to, or substantially indistinguishable from, the JÄGERMEISTER Marks, in connection with the promotion, distribution, and sale of goods identical to goods offered by and/or with the authority of

Plaintiff under the JÄGERMEISTER Marks.  Pursuant to 15 U.S.C. § 1117(b), Plaintiff is entitled to recover treble profits or damages, whichever amount is greater, together with reasonable attorneys' fees.

90. Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Plaintiff for which Plaintiff has no adequate remedy at law, and because this is an exceptional case, Plaintiff is entitled to statutory damages and reasonable attorneys' fees under 15 U.S.C. § 1117(c), as well as seizure of the Infringing Products under 15 U.S.C. § 1116.

91. Plaintiff has been damaged by the aforementioned acts of Defendants in an amount that is as yet undetermined.  If the aforementioned acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law.

<u>SECOND CAUSE OF ACTION</u>
**Federal Trademark Infringement**
**(as to all Defendants)**

92. Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

93. Defendants have used in commerce marks that are confusingly similar to those of Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations in violation of 15 U.S.C. § 1114.

94. Defendants' use of confusingly similar imitations of those of Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Infringing Products are manufactured or distributed by Plaintiff, or

are associated or connected with Plaintiff, or have the authorization, sponsorship, endorsement, or approval of Plaintiff.

95. Defendants' illicit activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, irreparable injury to Plaintiff's goodwill and reputation as symbolized by its JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations, for which Plaintiff has no adequate remedy at law.

96. Defendants' illicit activities demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations, to Plaintiff's substantial and irreparable harm.

97. Because Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiff, and because this is an exceptional case, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C §§ 1114, 1116, and 1117.

## THIRD CAUSE OF ACTION
### Contributory Federal Trademark Infringement
### (as to Defendants GearLaunch & Spring)

98. Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

99. Upon information and belief, clients of Defendants GearLaunch and Spring (including, but not limited to, Does #1 through #5) are infringing those of Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations by

marketing, advertising, offering for sale, distributing, and selling the Infringing Products.

100.    Upon information and belief, Defendants GearLaunch and Spring supply services to their clients (including, but not limited to, Does #1 through #5) knowing, or with reason to know, that its clients utilize such services for purposes of marketing, advertising, offering for sale, distributing, and selling Infringing Products.

101.    Upon information and belief, Defendants GearLaunch and Spring knowingly and materially assist in and/or contribute to the manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of Infringing Products, including, *inter alia*, by failing to cease manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales the Infringing Products of which they are aware or should be aware of their infringing nature, and by operating websites, social media pages, and social media advertisements through which Infringing Products are marketed, advertised, promoted, offered for sale, distributed, and/or sold.

102.    Defendants GearLaunch and Spring are contributorily liable for the infringing acts of their clients carried out through the online platform they provide and assisted by the services they provide.

103.    The contributory infringement of Plaintiff's JÄGERMEISTER Marks that are federally registered under the Class 25 Registrations by Defendants GearLaunch and Spring has been willful, intended to reap the benefit of Plaintiff's marketplace goodwill and reputation symbolized by Plaintiff's federally registered JÄGERMEISTER Marks, and violates 15 U.S.C. § 1114.

104.    Defendants' illicit conduct is causing, and is likely to continue to cause, substantial injury to the public and to Plaintiff.

105.    As a direct and proximate result of Defendants' illicit conduct, Plaintiff

has suffered, and will continue to suffer unless and until such conduct is enjoined by this

Court, irreparable damage and inherently unquantifiable injury and harm to its business,

reputation, and marketplace goodwill.

106.    Accordingly, Plaintiff is entitled to injunctive relief and to recover its

actual damages and/or an award of Defendants' profits, costs, and reasonable attorneys'

fees under 15 U.S.C §§ 1116 and 1117.  Any such damages and/or profits awarded to

Plaintiff should be trebled pursuant to 15 U.S.C. § 1117(a).

**FOURTH CAUSE OF ACTION**
**Federal Unfair Competition & False Designation of Origin**
**(as to all Defendants)**

107.    Plaintiff repeats and reincorporates the allegations contained in the

preceding paragraphs as though set forth in full herein.

108.    Defendants' use of the JÄGERMEISTER Marks and confusingly similar

imitations thereof has caused and is likely to cause confusion, deception, and mistake by

creating the false and misleading impression that the Infringing Products are

manufactured or distributed by Plaintiff, or are affiliated, connected, or associated with

Plaintiff, or have the authorization, sponsorship, endorsement, or approval of Plaintiff.

109.    Defendants have used false designations of origin, false or misleading

descriptions of fact, and false or misleading representations of fact in violation of 15

U.S.C. § 1125(a).  Defendants' illicit activities have caused and, unless enjoined by this

Court, will continue to cause a likelihood of confusion and deception among members of

the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as

symbolized by the JÄGERMEISTER Marks, for which Plaintiff has no adequate remedy

at law.

110.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the JÄGERMEISTER Marks to the substantial and irreparable injury of Plaintiff.

111.    Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Plaintiff, and because this is an exceptional case, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C §§ 1125(a), 1116, and 1117.

## FIFTH CAUSE OF ACTION
### Contributory Federal Unfair Competition & False Designation of Origin
### (as to Defendants GearLaunch and Spring)

112.    Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

113.    Upon information and belief, Defendants GearLaunch and Spring, and their clients, are competing unfairly with Plaintiff.

114.    Upon information and belief, Defendants GearLaunch and Spring supply their services to clients who they know or have reason to know are engaged in the distribution and sale of Infringing Products, and they continue to supply their services despite this knowledge.

115.    Upon information and belief, Defendants GearLaunch and Spring knowingly and materially assist in and/or contribute to sales of the Infringing Products, including, but not limited to, by marketing, advertising, promoting, offering for sale, and/or distributing Infringing Products despite being made aware of their infringing

nature.

116.    Defendants GearLaunch and Spring are contributorily liable for the infringing acts of their clients carried out through the online platform they provide and assisted by the services they provide.

117.    The contributory unfair competition, false representations, and false designations of origin engaged in by Defendants GearLaunch and Spring has been willful, intended to reap the benefit of Plaintiff's marketplace goodwill and reputation, and violates 15 U.S.C. § 1125(a).

118.    The illicit conduct of Defendants GearLaunch and Spring is causing, and is likely to continue to cause, injury to the public and to Plaintiff.

119.    As a direct and proximate result of the illicit conduct of Defendants GearLaunch and Spring, Plaintiff has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damages and inherently unquantifiable injury and harm to its business, reputation, and marketplace goodwill.

120.    Accordingly, Plaintiff is entitled to injunctive relief and to recover its actual damages and/or an award of Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C §§ 1116 and 1117.  Any such damages and/or profits awarded to Plaintiff should be trebled pursuant to 15 U.S.C. § 1117(a).

## SIXTH CAUSE OF ACTION
### New York Trademark Infringement, Unfair Competition, & Misappropriation
### (as to all Defendants)

121.    Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

122.    Defendants' illicit activities with respect to the JÄGERMEISTER Marks

alleged herein constitute common law trademark infringement, unfair competition, and misappropriation of Plaintiff's goodwill under the common law of the State of New York.

123.   Defendants are directly, vicariously, and/or contributorily liable for the illicit activities with respect to the JÄGERMEISTER Marks alleged herein.

124.   Defendants' illicit activities with respect to the JÄGERMEISTER Marks alleged herein have, at times relevant to this action, been willful.

125.   As a direct and proximate result of Defendants' illicit activities with respect to the JÄGERMEISTER Marks alleged herein, Plaintiff has been and, unless Defendants' illicit activities with respect to the JÄGERMEISTER Marks are enjoined by this Court, will continue to be damaged and irreparably harmed.

126.   Plaintiff has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION
**Federal Trademark Dilution**
**(as to all Defendants)**

127.   Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

128.   By virtue of Plaintiff's long and continuous use of the JÄGERMEISTER Marks in interstate commerce, the JÄGERMEISTER Marks have become and continue to be famous within the meaning of 15 U.S.C. § 1125(c), and were famous prior to Defendants' first use of the JÄGERMEISTER Marks in the United States.  As such, the JÄGERMEISTER Marks are eligible for protection against dilution pursuant to 15 U.S.C. § 1125(c).

129.   Defendants have used, in U.S. interstate commerce, after the JÄGERMEISTER Marks became famous, identical, substantially indistinguishable, and

confusingly similar imitations of the JÄGERMEISTER Marks in connection with the Infringing Products.

130.    Upon information and belief, Defendants' use of the JÄGERMEISTER Marks in connection with the Infringing Products has been willfully intended to trademark on Plaintiff's reputation and/or marketplace goodwill, and/or to cause dilution of Plaintiff's famous JÄGERMEISTER Marks.

131.    Defendants' use of the JÄGERMEISTER Marks in connection with the Infringing Products has diluted the distinctive quality and unique selling power of the JÄGERMEISTER Marks for clothing and apparel products, and has further diluted the JÄGERMEISTER Marks by their use in connection with goods that are inferior to goods bearing the JÄGERMEISTER Marks authorized by Plaintiff and/or defective.

132.    Defendants' use of the JÄGERMEISTER Marks in connection with the Infringing Products has threatened to cause and is causing dilution of the distinctive quality of the famous JÄGERMEISTER Marks by lessening Plaintiff's capacity to identify goods and services with which they are used, or licensed, or authorized for use.

133.    Defendants' aforementioned use of identical, substantially indistinguishable, and confusingly similar imitations of the JÄGERMEISTER Marks in U.S interstate commerce constitutes trademark dilution in violation of 15 U.S.C. § 1125(c).

134.    Plaintiff has no adequate remedy at law, and will suffer irreparable harm and injury, if Defendants' illicit use of the JÄGERMEISTER Marks is not enjoined.

135.    As a result of Defendants' illicit activities, Plaintiff has been damaged in an amount not yet determined or ascertainable, to be established at trial.

## EIGHTH CAUSE OF ACTION
### New York State Trademark Dilution
### (as to all Defendants)

136.    Plaintiff repeats and reincorporates the allegations contained in the preceding paragraphs as though set forth in full herein.

137.    Defendants' use of the JÄGERMEISTER Marks in connection with advertising, marketing, promoting, distributing, and selling the Infringing Products to persons located in the State of New York violates N.Y. General Business Law § 360-l.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every cause of action set forth above and award it relief including, but not limited to, the following:

A.    Preliminarily and permanently enjoining and restraining Defendants, Defendants' respective directors, officers, agents, servants, employees, and subsidiaries, affiliates, and all persons and entities in active concert or participation with, through, or under any of the foregoing:

1.    imitating, copying or otherwise making unauthorized use of any of the JÄGERMEISTER Marks, any unauthorized colorable imitation of any of the JÄGERMEISTER Marks, or any other marks, words, names or symbols confusingly similar to any of the JÄGERMEISTER Marks, in connection with the manufacture, importation, promotion, marketing, advertising, display, sale, offering for sale, production, circulation or distribution of any good or service;

2.    From committing any acts of unfair competition and/or creating a false designation or origin, false description, or false representation with respect to any of

the JÄGERMEISTER Marks;

3.     From committing any acts of unfair competition by falsely passing off any goods or services as authorized by, associated with, sponsored by, endorsed by, affiliated with, related to, or otherwise connected to Plaintiff, or inducing or enabling others to falsely pass off any goods or services as authorized, associated with, sponsored by, endorsed by, affiliated with, related to, or otherwise connected to Plaintiff;

4.     From manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, marketing, promoting or displaying any product bearing any of the JÄGERMEISTER Marks, any unauthorized colorable imitation of any of the JÄGERMEISTER Marks, or any other marks, words, names or symbols confusingly similar to any of the JÄGERMEISTER Marks;

5.     From using in any manner any packaging, labels, signs, literature, display cards, or other packaging, advertising, marketing, or promotional materials (physical and/or digital), or other materials (physical and/or digital) bearing any of the JÄGERMEISTER Marks, any unauthorized colorable imitation of any of the JÄGERMEISTER Marks, or any other marks, words, names or symbols confusingly similar to any of the JÄGERMEISTER Marks, in connection with any of Defendants' goods or services;

6.     From making any statements on advertising, marketing, or promotional materials for any of Defendants' goods or services which are false or misleading as to being an authorized distributor or seller of goods or services under any of the JÄGERMEISTER Marks, any unauthorized colorable imitation of any of the JÄGERMEISTER Marks, or any other marks, words, names or symbols confusingly

similar to any of the JÄGERMEISTER Marks;

       7.     From making any statements on advertising, marketing, or promotional materials for any of Defendants' goods or services which are false or misleading as to source or origin; and,

       8.     From committing any acts of trademark infringement, unfair competition, or false designation of origin calculated to cause members of the trade or purchasing public to falsely believe that any of Defendants' goods or services are Plaintiff's goods or services, or are authorized by, associated with, sponsored by, endorsed by, affiliated with, related to, or otherwise connected to Plaintiff.

     B.     Ordering that Defendants use their best efforts to recall from the trade, including any and all distributors, wholesalers, dealers, retailers and all other third parties, any and all unauthorized products bearing any of the JÄGERMEISTER Marks, any unauthorized colorable imitation of any of the JÄGERMEISTER Marks, or any other marks, words, names or symbols confusingly similar to any of the JÄGERMEISTER Marks;

     C.     Ordering that Defendants deliver to Plaintiff any and all containers, signs, packaging materials, printing plates, advertising, marketing, and promotional materials, and any materials used in the preparation of any of the foregoing, which in any way use or make reference to any of the JÄGERMEISTER Marks, any unauthorized colorable imitation of any of the JÄGERMEISTER Marks, or any other marks, words, names or symbols confusingly similar to any of the JÄGERMEISTER Marks.

     D.     Ordering that Defendants, within thirty (30) days after service of notice in entry of judgment or issuance of an injunction pursuant thereto, file with the Court and

serve upon Plaintiff's counsel a written report under oath setting forth details of the

manner in which Defendants have complied with the Court's order pursuant to

Paragraphs A-C above, pursuant to 15 U.S.C. § 1116.

   E.      Ordering Defendants to account for all gains, profits and advantages

derived from their acts of infringement, false designation, unfair competition and other

violations of law alleged herein.

   F.      Ordering that Defendants be ordered to pay for Plaintiff's actual damages

according to proof and all profits realized by Defendants by reason of the unlawful acts

by Defendants alleged in this Complaint, pursuant to 15 U.S.C. § 1117.

   G.      Ordering that Defendants be ordered to pay treble damages to Plaintiff on

account of their willful, intentional and bad faith conduct pursuant to 15 U.S.C. § 1117.

   H.      Ordering that Defendants be ordered to pay statutory damages of up to

$ 2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or

distributed, as the court considers just, pursuant to 15 U.S.C. § 1117(c).

   I.      Ordering that Defendants be ordered to pay to Plaintiff punitive and

exemplary damages as provided by New York law.

   J.      Directing that Defendants be ordered to pay to Plaintiff its reasonable

attorneys' fees, costs and disbursements incurred herein in view of Defendants'

intentional and willful misconduct, pursuant to 15 U.S.C. § 1117.

   K.      Awarding Plaintiff pre-judgment and post-judgment interest to the

maximum extent provided by law.

   L.      Awarding Plaintiff such other and further relief as the Court may deem

just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury of all counts so triable.


Dated: July 11, 2018
        New York, New York

                              Respectfully submitted,

                              FERDINAND IP, LLC


                              By: _____
                              Alexander R. Malbin, Esq. (AM 9385)
                              Edmund J. Ferdinand, III, Esq. (EF 9885)
                              450 Seventh Avenue, Suite 450
                              New York, New York 10123
                              (p) (212) 220-0523
                              (f) (203) 905-6747
                              amalbin@24iplg.com
                              jferdinand@24iplg.com


                              *Attorneys for the Plaintiff,*
                              *Mast-Jaegermeister SE*